**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Blanch Lapointe,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-16-02745-PHX-DLR<br><br>**ORDER** |

Plaintiff Valerie Lapointe applied for Social Security Disability Insurance benefits in March 2013, alleging disability beginning April 16, 2012. After state agency denials, Lapointe appeared for a hearing before an administrative law judge ("ALJ"). A vocational expert also was present and testified. Following the hearing, the ALJ issued a written decision finding that Lapointe is not disabled within the meaning of the Social Security Act ("SSA"). The ALJ's decision became the agency's final decision after the Social Security Administration Appeals Council denied Lapointe's request for review. Lapointe now seeks judicial review of that decision. For the following reasons, the decision of the Commissioner of Social Security Administration is reversed and remanded for further proceedings.

## **BACKGROUND**

To determine whether a claimant is disabled for purposes of the SSA, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of

proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ determined that Lapointe meets the insured status requirements of the SSA through December 31, 2017, and has not engaged in substantial gainful activity since her alleged disability onset date. (A.R. 19.) The ALJ found at step two that Lapointe has no severe mental impairments, but that her degenerative joint disease of the right shoulder, status post shoulder surgery, and obesity are severe physical impairments. The ALJ therefore proceeded to step three and found that Lapointe's impairments do not meet or medically equal the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 19-22.) At step four, the ALJ found that Lapointe has the RFC to perform "medium work . . . except [she] can occasionally climb ladders, ropes, and scaffolds, and crawl. She can occasionally engage in overhead reaching with the right upper extremity." (*Id.* at 23.) Based on this RFC, the ALJ found that Lapointe is capable of performing past relevant work as a payroll clerk, mortgage loan clerk, and eligibility worker. (*Id.* at 27.) Accordingly, the ALJ found that

Lapointe is not disabled within the meaning of the SSA. (*Id.* at 27-28.)

Lapointe contends that the ALJ erred at step two by not finding the existence of severe mental impairments. Lapointe argues that, in doing so, the ALJ improperly assigned greater weight to the opinions of non-examining state agency reviewers than to her mental health treatment providers and discounted her symptom testimony. (Doc. 11.)

## **STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citation omitted). Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

## **DISCUSSION**

At step two, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of impairments is "severe" within the meaning of the SSA if it "significantly limits [a claimant's] physical or mental ability to do basic work activities," and is "expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii) & (c). Basic work activities include physical functions, such as walking, standing, and seeing, as well as cognitive or social

functions, such as understanding and carrying out simple tasks, using judgment, responding appropriately to supervision, coworkers, and usual work situations, and dealing with changes in a routine work setting. SSR 85-28, 1985 WL 56856, at *3. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28, 1985 WL 56856, at *3).

Here, the ALJ found that Lapointe's anxiety and affective disorder "are non-severe impairments because they do no result in more than mild limitations of functioning. Specifically, there are no restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace." (A.R. 20.) The ALJ explained her finding as follows:

> [Lapointe] has never received inpatient psychiatric care of extended duration. Yet, [she] did receive formal care, as she was followed by a psychiatrist and psychotherapist beginning in 2012. Although [Lapointe] complained of some depressed mood, treating notes reveal [she] was under significant stress associated with feeling persecuted at her job and her son's severe emotional chemical dependency issues. However, by March 2013, [her] mood was fairly stable. Notes from March 2014 reflect [Lapointe's] symptoms were in remission. By August 2014, [she] reported feeling better with no adverse side effects. [Lapointe] was typically seen every 8 weeks for medication management. Mental status examinations found [Lapointe] alert and oriented with good grooming and hygiene, mildly depressed and irritated to good mood, restricted to euthymic affect, logical thoughts, good memory, and adequate concentration, judgment, and insight. Review of the record reveals [Lapointe] performed activities of daily living independently and related to others well. There is thus no evidence of more than mild limitations in this regard because [Lapointe] is capable of performing numerous adaptive activities independently, appropriately, effectively, and on a sustained basis despite her mental impairments. It was noted further that she is still capable of maintaining interaction with individuals in a variety of situations independently, appropriately, effectively, and on a sustained basis despite her mental impairments. As to her concentration, persistence and pace, she is no more than mildly limited in this area because [she] still has the ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings despite her mental impairments. [Lapointe] was observed throughout the

> hearing and did not manifest any difficulty concentrating during the hearing. During the time when [she] was being questioned, [Lapointe] appeared to process the questions without difficulty, and to respond to the questions appropriately and without delay. Moreover, as noted above, [Lapointe] had good mini mental status examinations with her treating sources. For these reasons, she is no more than mildly limited due to her mental impairments.

(*Id.*)

In making her step two determination, the ALJ also considered the opinions of Lapointe's mental health treatment providers, Licensed Professional Counselor Carol Bettino and psychiatrist Dr. Katherine Cheeves, but assigned them little weight. (*Id.* at 21.) The ALJ instead assigned great weight to the assessments of non-examining state agency reviewers Drs. Adrianne Galluci and Thomas VanHoose, both of whom reviewed Lapointe's medical records up to that point and opined that she had no severe mental impairments. (*Id.* at 21, 66-67, 79.)

**I. The ALJ Properly Weighed Dr. Cheeves' Opinion**

A treating physician's opinion generally is entitled to deference. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight generally should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Thus, where a treating physician's opinion is not contradicted by another physician it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Dr. Cheeves, who began treating Lapointe in July 2012, completed two assessments of Lapointe's work capabilities.[1] In November 2013, Dr. Cheeves opined

---

[1] In a treatment note, Dr. Cheeves also indicated her belief that Lapointe was "totally disabled for an indefinite period of time." (A.R. 556.) Both the ALJ and the Commissioner in her response memorandum treated this note as a third opinion concerning Lapointe's work capabilities. (*Id.* at 21; Doc. 12 at 12.) Lapointe contends in her opening brief, however, that Dr. Cheeves submitted only two assessments. (Doc. 11

- 5 -

that Lapointe has moderate limitations in understanding and remembering detailed instructions, and in interacting appropriately with the public, supervisors, and coworkers. (*Id.* at 507.) She also assessed marked limitations in Lapointe's ability to respond appropriately to usual work pressures and changes in routine work settings. (*Id.*) Based on these limitations, Dr. Cheeves opined that Lapointe would be off task more than 30% of the time, would miss or leave work early five or more days per month, and would work efficiently less than half the time. (*Id.* at 508.)

In July 2014, Dr. Cheeves assessed substantially similar limitations. She opined that Lapointe is markedly limited in her ability to understand and remember detailed instructions, interact appropriately with supervisors, and respond appropriately to usual work pressures and changes in routine work settings. (*Id.* at 524.) Dr. Cheeves also assessed moderate limitations in interactive with the public and co-workers. (*Id.*) Based on these limitations, Dr. Cheeves opined that Lapointe would be off task more than 30% of the time, would miss or leave work early five or more days per months, and would work efficiently only half the time. (*Id.* at 525.)

Dr. Cheeves' opinion is contradicted by the opinions of non-examining state agency reviewers. Accordingly, the ALJ was required to articulate specific and legitimate reasons, supported by substantial evidence in the record, for discounting it.[2] The ALJ complied with these standards.

---

at 5.) It is apparent, then, that Lapointe does not consider Dr. Cheeves' treatment note to be a formal opinion concerning her work capabilities. The Court therefore sees no need to address it further. And in any event, the ALJ correctly found that the opinion expressed in this treatment note is not entitled to special weight because whether Lapointe is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(c)(6) & (d).

[2] Lapointe argues that the more demanding clear and convincing reasons standard should apply because the opinions of non-examining state agency reviewers are not, alone, substantial evidence. Though she is correct that non-examining physician opinions, standing alone, may not serve as substantial evidence supporting an ALJ's decision, *see Lester*, 81 F.3d at 831, it does not follow that the ALJ or the Court must ignore contradicting medical opinions from state agency reviewers when determining which standard of review applies. Stated differently, a non-examining physician opinion that contradicts a treating physician opinion may trigger the specific and legitimate reasons standard, even though the non-examining physician's opinion cannot, alone, serve as substantial evidence supporting those specific and legitimate reasons.

The ALJ reasonably concluded that Dr. Cheeves' opinion was not supported by her treatment notes, which is a specific and legitimate reason for discounting it. (*Id.* at 21.) Though the records reflect that Lapointe's anxiety and its effects on her concentration, mood, and affect varied slightly over the course of her treatment, at no point did Dr. Cheeves observe severe effects. (A.R. 430-438; 543-557.) Moreover, her records indicate that Lapointe's anxiety tended to increase with situational stressors, such as her son's substance abuse, her physical health problems, and reported harassment at work. (*See, e.g., id.* at 434, 438, 548, 551, 554-555, 557.) Lapointe's symptoms also seemed to worsen when she stopped taking her medications. (*See., e.g., id.* at 430, 547.) Even during times of heightened stress, however, treatment records revealed that Lapointe had either normal or only somewhat limited concentration, affect, and mood. Numerous records also revealed normal affect, concentration, and mood despite ongoing stressors. (*Id.* at 431, 432, 552-553, 555.)

Though Lapointe advocates for a more favorable interpretation of the evidence, the ALJ's interpretation is rational. The overall longitudinal record paints a picture of someone whose anxiety generally is controlled by medication and, when exacerbated by situational stressors, results in only mild effects on concentration, thought processes, and affect. Substantial evidence therefore supports the ALJ's finding that the limitations assessed by Dr. Cheeves were inconsistent with her treatment notes.

**II. The ALJ Mischaracterized Lapointe's Daily Activities**

The ALJ based her non-severity finding, in part, on her belief that Lapointe engages in daily activities that are inconsistent with severe mental impairment. Although the ALJ did not elaborate on this explanation in her step two finding, elsewhere in the decision she discussed Lapointe's daily activities in more detail. Specifically, the ALJ explained:

> [Lapointe] has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. While the record does show [Lapointe] has severe physical impairments, they do not appear to significantly limit her daily functional abilities. For instance, [she] indicated she was able to care for her own

> personal hygiene grooming needs, prepare meals, do household chores, drive a vehicle, go out alone, shop outside the home, pay bills and manage finances, spend time with others regularly, attend 12-step meetings twice per week, attend church services occasionally, and follow instructions. To an examining physician, [Lapointe] denied any significant impact on activities of daily living, as she remained independent with such. Specifically, [Lapointe] reported she was able to meet medical, social, and work obligations. Treating records reveal [Lapointe] walked and biked for exercise. Moreover, she as involved in caring for her 4-month old grandson. The physical and mental capabilities requisite to performing many of the tasks described above replicate those necessary for obtaining and maintaining employment.

(*Id.* at 25.)

Having reviewed the record, the Court finds that the ALJ's characterization of Lapointe's daily activities largely is not supported by the evidence. For example, in function reports dated May and October 2013, Lapointe denied being able to pay bills and manage finances. (*Id.* at 200, 239-40.) She reported that her anxiety makes concentration difficult and, as a result, she has trouble following instructions unless they are repeated to her often. (*Id.* at 201, 241.) Lapointe stated that she rarely cooks because her concentration difficulties make the task frustrating. (*Id.* at 238.) Reinforcing her difficulty concentrating, Lapointe reported that she can read only for a short amount of time. (*Id.* at 200, 240.) Further, though Lapointe admittedly goes to AA meetings and sometimes attends church, she also reported that she sometimes needs someone to accompany her if she is feeling particularly anxious that day. (*Id.* at 200, 240.) To the extent the ALJ found Lapointe's testimony concerning the severity and limiting effects of her mental impairments not credible based on a misunderstanding of Lapointe's reported daily activities, it is difficult to find that the decision is supported by substantial evidence.

Moreover, the ALJ did not distinguish between daily activities inconsistent with the alleged severity of Lapointe's physical impairments from those that the ALJ believed were inconsistent with the alleged severity Lapointe's mental impairments. Several of the activities cited by the ALJ, such as walking, riding a bike, and doing chores, do not logically relate to Lapointe's alleged limitations in concentration, following instructions,

and interacting with others. Indeed, the ALJ prefaced her discussion of Lapointe's daily activities with her conclusion that Lapointe's *physical* impairments do not significantly limit her functioning. The lack of clarity as to which daily activities undermined which limitations, and why, makes the ALJ's decision on this point difficult to meaningfully review. For these reasons, the Court finds that the ALJ's articulated reason for discounting Lapointe's testimony concerning the limiting effects of her mental impairments is not supported by substantial evidence.

### III. The ALJ Improperly Discounted Bettino's Opinion

Bettino treated Lapointe from at least February 2012 to September 2014. (*Id.* at 419-27, 591-99.) In January 2013, Bettino completed a Mental Status Supplemental Questionnaire, in which she opined that Lapointe has moderately severe limitations in constriction of interests, responding appropriately to supervision, working with regular contact with others, performing complex tasks, and working under stressful situations. (*Id.* at 418.) Additionally, she assessed moderate limitations in Lapointe's ability to work in situations with minimal public contact, and only mild limitations in her ability to carry out and understand instructions, and perform both repetitive and varied tasks. (*Id.*) Bettino assessed no limitations in Lapointe's ability to relate to other people, engage in daily activities (such as attending meetings, socializing with others, and attending to personal needs), and perform tasks involving minimal intellectual effort. (*Id.*) Her opinion noted that Lapointe generally was alert and oriented, and had logical thoughts, though she was easily overwhelmed. (*Id.* at 417.)

Because Bettino is not considered an acceptable medical source as defined by agency regulations, the ALJ was required to provide only germane reasons, supported by substantial evidence, for discounting her opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012). The ALJ gave Bettino's opinion little weight because "[t]hese opinions are generally without support from the treatment notes and seem to rely quite heavily on [Lapointe's] subjective complaints." (A.R. 21.) She also stated that "[t]he course of treatment pursued by Ms. Bettino has not been consistent with what one would

expect if the claimant were truly as limited" as Bettino's assessment suggested. (*Id.*) The ALJ found further that the treating relationship between Bettino and Lapointe was "short-term at the time this assessment was offered" and that the assessment was less persuasive because it was offered on a check-box form. (*Id.*)

Though some of the ALJ's stated reasons could be germane, they are not supported by substantial evidence. First, the ALJ's characterization of the treatment relationship as "short-term" is difficult to square with the fact that Bettino saw Lapointe for twenty-one therapy sessions between January 2012 and October 2012. (*Id.* at 417.) Second, to the extent the ALJ believed that the course of treatment Bettino pursued was too conservative, she failed to explain why. Notably, Bettino's course of treatment included referral to Dr. Cheeves, who then prescribed medication. Third, the ALJ's finding that Bettino's opinion is not supported by her treatment notes is, as a practical matter, unreviewable because Bettino's treatment notes largely are illegible. Though the parties each cite examples of Bettino's treatment notes to support their respective positions, the Court cannot meaningful review whether the ALJ's finding is supported by substantial evidence because the Court cannot interpret Bettino's treatment notes as a whole. Lastly, to the extent the ALJ discounted Bettino's opinion because it was based, in part, on Lapointe's subjective complaints, the Court already has determined that the ALJ failed to articulate a sufficient basis for discounting those subjective complaints. For these reasons, the Court concludes that, although some of the ALJ's articulated reasons for discounting Bettino's opinion are germane, they either are not supported by substantial evidence or are not subject to meaningful review because the treatment record is illegible.

**IV. Remedy**

In light of the foregoing, the Court is unable to conclude that the ALJ's step two finding is free of legal error or supported by substantial evidence. The ALJ contends that any error is harmless because Lapointe prevailed at step two with respect to her physical impairments and, therefore, continued through the sequential evaluation process. The

Court disagrees.

An error at step two is harmless is the ALJ nonetheless considers the limitations posed by the impairment at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). It is unclear whether the ALJ did so here. Indeed, the RFC does not appear to incorporate any mental limitations. Moreover, though the ALJ notes in her step four analysis that Lapointe alleged disability due, in part, to bipolar disorder, manic depression, and anxiety disorder, this portion of her decision is devoid of meaningful analysis of Lapointe's mental limitations. The Court therefore cannot conclude that the error was harmless. *See Betts-Cossens for Betts v. Berryhill*, Civ. No. 16-00409 ACK-KJM, 2017 WL 2598889, at *7 (D. Haw. June 15, 2017); *Calame v. Colvin*, No. CV-12-02363-DGC, 2013 WL 3716604, at *6 (D. Ariz. July 15, 2013).

Lapointe argues that the Court should apply the credit-as-true rule and remand for award of benefits. The credit-as-true rule allows the Court to make a finding of disability when an ALJ fails to provide legally sufficient reasons for rejecting challenged evidence, there are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the evidence in question credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The Court need not apply the credit-as-true rule, however, if evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

The Court finds that a remand for further proceedings, rather than for an award of benefits, is appropriate. Though the Court finds that the ALJ's treatment of Lapointe's mental impairments, in its present form, is not supported by substantial evidence, the record as a whole casts doubt over Lapointe's allegations of disabling mental limitations. Indeed, Lapointe reported to an examining physician that she was not significantly limited in her ability to engage in activities of daily living. (A.R. 607.) There also appears to be some conflict between Lapointe's testimony concerning the severity of her concentration difficulties and the notes from her treatment providers on this issue.

Moreover, further proceedings would serve a useful purpose. Namely, on remand the ALJ can take appropriate measures to clarify Bettino's treatment notes, or at least the ALJ's own interpretation of them. For these reasons,

**IT IS ORDERED** that the final agency decision is **REVERSED** and this matter **REMANDED** for further proceedings. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 29th day of September, 2017.

Douglas L. Rayes
United States District Judge